**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| H&R BLOCK EASTERN ENTERPRISES, INC., | * | |
| | * | |
| Plaintiff, | * | Civil Action No. MJG-07-1822 |
| v. | * | |
| CHARLES W. TURNBAUGH, in his official capacity as Maryland Commissioner of Financial Regulation, | * | |
| | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \*

**DEFENDANT'S REPLY TO PLAINTIFF'S
OPPOSITION TO ORAL MOTION TO DISMISS**

By undersigned counsel, Defendant, Charles W. Turnbaugh, in his official capacity as the Maryland Commissioner of Financial Regulation, files this Reply to Plaintiff's Memorandum in Opposition to Oral Motion to Dismiss ("Opposition").

**BACKGROUND**

The complaint in this matter was filed on July 11, 2007, and set for a preliminary hearing before the Honorable Marvin J. Garbis on July 20, 2007. Prior to the hearing, on July 18, 2007, counsel for defendant filed with Judge Garbis a cover letter along with two documents: a Declaration of Charles W. Turnbaugh, and a letter from Thomas E. Perez, Secretary of the Maryland Department of Labor, Licensing and Regulation ("DLLR") to Brian H. Schmidt, Vice-President and General Counsel for H&R Block. (Attached hereto

as Exhibit A.) The cover letter raised the preliminary issue of whether or not there is a case or controversy in this matter. In the letter, plaintiff was put on notice that defendant would request, at the hearing, to dismiss this action. That request was made by counsel at the July 20, 2007 hearing, and the Court considered the oral motion to dismiss to be properly before the Court. Further, the Court indicated there was no need for defendant to file a written motion to dismiss. *See* Fed. R. Civ. P. 7(b)(1) (motion need not be made in writing if it is "made during a hearing or trial"). As noted by H&R Block in its Opposition, the motion to dismiss before the Court should be considered as one made pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. This Memorandum supplements the arguments made at the July 20th hearing, and responds to Plaintiff's Opposition filed on August 14, 2007.

## ARGUMENT

Plaintiff's insistence on its entitlement to a declaratory judgment under 28 U.S.C. § 2201(a) cannot overcome the threshold constitutional requirement that there be an Article III case or controversy for this Court to exercise its judicial authority. Since no such case or controversy exists, the Constitution requires the Court to refrain from exercising jurisdiction.

Article III, § 2 of the United States Constitution limits the power of the judiciary to deciding cases or controversies. As the United States Court of Appeals for the Fourth Circuit stated in *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991): "[d]octrines like standing, mootness and ripeness are simply subsets of Article III's command that the courts resolve

disputes, rather than emit random advice." These constitutional prerequisites, along with the related prudential limitations on the exercise of federal jurisdiction, serve to provide "an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times," *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998), out of concern for "the proper -- and properly limited -- role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In fulfilling this limited role, "federal courts may exercise power only 'in the last resort, and as a necessity,'" *Allen v. Wright*, 468 U.S. 737, 752 (1984)(citation omitted), in "'actual cases . . . involving issues that are precisely framed by their connection to specific litigants in a concrete context.'" *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998)(citation omitted).

For the reasons set forth below, this Court should dismiss this action because there is no case or controversy, in that plaintiff does not have standing, the case is not ripe for adjudication, and the matter is moot.

**1.      H&R Block Has No Standing In This Case.**

"One element of the 'bedrock' case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *McConnell v. Federal Election Com'n*, 540 U.S. 93, 225 (2003)(Rehnquist, C.J.). As the party "invoking federal jurisdiction," the plaintiff has "the burden of proof and persuasion as to the existence of standing." *Lujan v Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To prove standing, the plaintiff must show "injury in fact," which must be either an actual injury that has already occurred or a threatened injury

that is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). As the Fourth Circuit noted in *Bryant*: "Abstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical'." 924 F.2d at 529.

In the matter before this Court, H&R Block lacks standing because it cannot satisfy its burden of showing an injury in fact. H&R Block cannot show any injury in fact that is "real and immediate," *id*., or "certainly impending," *Whitmore v. Arkansas*, 495 U.S. at 155, because the Commissioner has not taken any action against H&R Block, and no such action that could give rise to a redressable injury is even threatened at this time. When this lawsuit was first filed, there was no case or controversy because the Commissioner had not taken any concrete action against H&R Block and no such action was imminent. In fact, the most recent written communication from Commissioner Turnbaugh to H&R Block prior to the litigation was his January 4, 2007 letter, in which he stated: "In light of the changes in these programs [Refund Anticipation Loans], it is necessary for this Office to again conduct a review to assure compliance with applicable Maryland law." (Letter from Commissioner Turnbaugh attached hereto as Exhibit B.) That agency action was neither specific nor immediate enough to satisfy the injury in fact requirement for standing, and thus insufficient to establish the existence of a case or controversy.

Regardless of whether or not a case or controversy existed at the time this case was

originally filed, however, it is absolutely clear at the present time that the Maryland Department of Labor, Licensing and Regulation, of which the Commissioner's Office is a unit, has no intent to require H&R Block to do anything which could be the subject of an injunction or declaratory relief. As of August 3, 2007, Charles W. Turnbaugh vacated the position of Commissioner of Financial Regulation. Sarah Bloom Raskin took office as the new Commissioner on August 28, 2007. As stated in the attached Declaration of Charles Turnbaugh and letter from Secretary Thomas E. Perez to H&R Block, the current intent of the agency is to allow the new Commissioner to re-evaluate whether and to what extent the Maryland Credit Services Businesses Act, Md. Ann. Code, Comm. Law, § 14-1901, *et seq*., might apply to H&R Block and other companies conducting similar transactions in Maryland. In this posture, it is impossible to conclude that H&R Block has the requisite standing to pursue this matter because there is no injury in fact, and the plaintiff is not "immediately in danger of sustaining" any injury, *Bryant*, 924 F.2d at 529. Nor is there any basis to construe DLLR's intent to re-examine the issue as a real and immediate injury. Accordingly, this Court should find that H&R Block lacks standing in this matter.

In trying to bolster its standing argument, H&R Block wrongly relies on a decision that does not even address standing or ripeness, *National City Bank of Indiana v. Turnbaugh*, 463 F.3d 325 (4th Cir. 2006). Unlike this case, *National City* involved not merely threatened or imminent action by the Commissioner, but an actual history of regulatory action by the Commissioner against the plaintiffs pursuant to the challenged State laws. Indeed, for many

years prior to the time an injunction was issued in *National City*, the Commissioner had been affirmatively *licensing and regulating* two of the three plaintiffs in that case, National City Mortgage Company and First Franklin Financial Corporation. Moreover, the event that triggered the plaintiffs' request for declaratory and injunctive relief in *National City* was an actual exercise of the Commissioner's regulatory authority over a licensed entity, *i.e.* his demand to view the entire loan portfolio of First Franklin (a wholly owned subsidiary of plaintiff National City Bank of Indiana) to assess potential violations of the Maryland restriction on prepayment penalties under Md. Code Ann., Comm. Law, § 12-105(b)(4). The specific, pervasive regulatory action by the Commissioner in *National City* and the consequent ongoing, actual "injury in fact," stand in stark contrast to the current agency posture here, which merely consists of the new Commissioner re-evaluating the applicability of Maryland law. Therefore, *National City* provides no support for a finding of standing in this matter.[1]

---

[1] There is also no validity to H&R Block's further assertion that *Watters v. Wachovia*, 127 S. Ct. 1559 (2007), somehow supports its standing in this case. While the Court in *Watters* did not have occasion to address standing, the circumstances of that case, like those in *National City*, materially differed from those of H&R Block here. In addition to the history of actual regulation of the plaintiffs under the challenged State laws in *Watters* and *National City*, which is notably absent from this case, the plaintiff national banks in both cases had standing to complain about the State regulators' direct action against subsidiaries owned by the national banks. Unlike the parties in those cases, H&R Block is neither a national bank nor a subsidiary of a national bank. Neither *Watters* nor *National City* could be construed as an implicit endorsement of H&R Block's standing to bring its preemption challenge under the National Bank Act, without dramatically extending the sweep of preemption to encompass entities unaffiliated with national banks and, therefore, well beyond the parameters of preemption recognized by the Supreme Court in *Watters*.

Nor does *Pacific Capital Bank, N.A. v. Connecticut*, 2006 WL 2331075, support H&R Block's claim that it has standing in this case. In *Pacific Capital*, unlike this case, the plaintiff was a national bank that had changed its business model and was offering Refund Anticipation Loans "at little or no profit in Connecticut to comply with [the law]." 2006 WL 2331075 at 4. As a national bank, the plaintiff was subject to penalties of up to $1 million per day if it violated the law. *Id*. The court there viewed such facts, which are not present here, as sufficient to establish actual injury to meet the standing requirement. Neither the undisputed facts of this case nor the applicable case law support a conclusion that H&R Block has standing to maintain this action for declaratory relief.

**2.    This Case Is Not Ripe For Adjudication.**

As the Supreme Court stated in *Texas v. United States*, 523 U.S. 296, 300 (1998): "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (Citations omitted.) That is exactly the situation presented here: agency action may or may not result from the new Commissioner's re-evaluation, but it is premature for this Court to consider entry of an injunction or declaratory relief until the agency actually takes, or threatens to take immediately, some action that causes an injury to H&R Block. Without such actual or "certainly impending" action, the case not only lacks an injury in fact sufficient to establish standing; it is also not ripe for adjudication.

In deciding whether a matter is ripe for adjudication, a court must also determine the

"fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Neither factor warrants a finding of ripeness in this case, since the issues are not fit for judicial review and the parties will suffer no cognizable hardship if this Court withholds consideration.

First, H&R Block's claims are not fit for judicial review because, as stated above, there is simply no current or imminently pending agency action. The Declaration of former Commissioner Turnbaugh and the letter from Secretary Perez to H&R Block could not be any clearer on this issue. Secretary Perez stated as follows in his July 18, 2007 letter to Brian H. Schmidt, H&R Block's Vice-President and Corporate Counsel:

> I have asked the new Commissioner to re-examine the agency's interpretation as it may apply to transactions involving federally chartered depository institution lenders. She will begin that re-evaluation with her staff at her earliest opportunity. In the meantime, the Office of the Commissioner will not initiate any action against H&R Block pending this re-evaluation.

Exhibit A. Moreover, at the end of his letter, Secretary Perez stated: "Should the agency's re-evaluation result in the conclusion that State regulatory action is appropriate, the Commissioner will give H&R Block the courtesy of advanced notice of that action." *Id.* For now, all that is certain about agency action is that the applicability of the law to H&R Block's circumstances will be re-evaluated and the new Commissioner will make a policy determination regarding any intended enforcement or lack thereof. As the court noted in *West Virginia Highlands Conservancy, Inc. v. Babbitt*, 161 F.3d 797, 800 (4th Cir. 1998) (citation omitted), a matter is typically fit for a judicial determination if the "'agency rule or

action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings.'" Since there is considerable uncertainty and no final agency action in this matter, this Court must refrain from exercising judicial authority under Article III, § 2 of the Constitution and the prudential considerations that inform the ripeness doctrine.

Just as the Supreme Court has observed in ordering a case dismissed for lack of ripeness, this case cannot be deemed fit for judicial review because the Court and the parties "possess no factual record of an actual or imminent application" of the challenged State laws sufficient to present the pertinent issues "in 'clean-cut and concrete form.'" *Renne v. Geary*, 501 U.S. 312, 321-22 (1991). Not only is this case "pre-enforcement," as H&R Block suggests; it is "pre-decisional." In fact, the current status of the agency's deliberative process is more accurately described as preliminary and inchoate, such that the possibility of any actual impact on H&R Block remains entirely speculative. This is so because the new Commissioner has not yet considered how she will interpret the Credit Services Businesses Act as it pertains to the types of transactions H&R Block conducts in Maryland. Given this present posture, the issues raised in the complaint cannot be presented in the "clean-cut and concrete form" required by the ripeness doctrine.

This lack of any actual or impending concrete application of the challenged laws to H&R Block renders this case unlike any of those cited by H&R Block to support its position that it is entitled to a declaratory judgment. Several of those cases have no relevance because, unlike this case, there the ripeness determination turned upon impending effective

dates of new legislation, which provided a degree of certainty and inevitability of enforcement that is completely absent from this case. *See e.g. Mobile Oil Corp. v. Attorney General of Va.*, 940 F.2d 73 (4th Cir. 1991) (June 29, 1990 lawsuit to enjoin July 1, 1990 effective date of amendments to the Virginia Petroleum Products Franchise Act); *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) (legal challenge brought approximately two weeks after the July 1, 1985 effective date of amendments to Virginia statute); *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180 (4th Cir. 2007) (suit brought prior to effective date of recently enacted Maryland Fair Share Health Care Act). None of the decisions cited by H&R Block found ripeness in circumstances similar to this matter, where the applicability of an already effective law is still subject to deliberation by the agency and the plaintiff is threatened with no actual consequences whatsoever. Therefore, the claims raised in the complaint are not fit for judicial review.

Second, contrary to H&R Block's assertions, there will not be any cognizable hardship to the parties if this Court withholds review at this time. In an attempt to show the requisite hardship, at the oral argument on July 20th H&R Block cited the business costs associated with the uncertainty of the application of Maryland law. Such uncertainty, however, simply cannot suffice to overcome the considerations favoring deferral of a dispute that is not ripe for adjudication. The Supreme Court has specifically rejected the idea that "uncertainty as to the validity of a legal rule" or one's obligations under the law "constitutes a hardship for purposes of the ripeness analysis." *National Park Hospitality Ass'n v. Department of*

*Interior*, 538 U.S. 803, 811 (2003). As explained by the Supreme Court, if the costs incurred due to legal uncertainties were to be recognized as a hardship for ripeness purposes, "courts would soon be overwhelmed with requests for what essentially would be advisory opinions because most business transactions could be priced more accurately if even a small portion of existing legal uncertainties were resolved." *Id.*

H&R Block is making the same argument here that was rejected by the Supreme Court in *National Park Hospitality*. Allowing H&R Block to avail itself of judicial intervention in this case, on these facts, would invite every business in Maryland to use the federal courts as a source of abstract legal advice and as a means of impeding the State from even evaluating or investigating whether a company should be subject to the regulatory laws of Maryland. Such a development would be precisely what the case or controversy requirement of Article III is intended to prevent: the misuse of a federal court as a mere business advisory forum. For these reasons, this Court should reject H&R Block's claim of hardship, economic or otherwise, and the case should be dismissed for lack of ripeness.

**3.    This Case Is Now Moot.**

While this case is not ripe, even if it were arguably ripe when the complaint was first filed, "[t]o remain a justiciable controversy, a suit 'must remain alive throughout the course of litigation, to the moment of final appellate disposition.'" *Bahnmiller v. Derwinski,* 923 F.2d 1085, 1088 (4th Cir. 1991)(citations omitted). As the Fourth Circuit has recognized, an agency's "[w]ithdrawal or alteration of administrative policies can moot an attack on those

policies," even where the challenged policies actually have been applied previously. *Id*. at 1089 (citations omitted). Therefore, even if one were to accept H&R Block's argument that former Commissioner Turnbaugh's statements constituted a threat of actual and imminent regulatory action under the Maryland Credit Services Business Act, *see* Exhibit B ("it is necessary for this Office to again conduct a review to assure compliance with applicable Maryland law"), any colorable threat has since been withdrawn as part of the reassessment and revision of policies that is an expected and necessary process whenever a newly elected Administration takes office in our democracy.

Specifically, the record now before the Court shows that whatever threat H&R Block perceived when it filed suit July 11, 2007, was rendered moot by subsequent events, including the departure of Commissioner Turnbaugh; the appointment of new Commissioner Raskin; and the July 18, 2007 letter of Secretary Perez expressly declaring that Commissioner Raskin would be undertaking a "re-evaluation with her staff" and confirming that the Commissioner "will not initiate any action against H&R Block pending this re-evaluation." Therefore, if this case ever could have been considered ripe, it is now moot. *See*, *e.g.*, *Bahnmiller*, 923 F.2d at 1089 (dismissing for mootness where events at the administrative agency since the filing of the lawsuit had "simply overtaken the pace of this litigation"); *Regional Management Corp. v. Legal Serv. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999)(Freedom of Information Act claim challenging denial of requested records was dismissed as moot while separate claim challenging alleged policy behind agency's initial

denial of records request was dismissed as not ripe).

H&R Block mistakenly relies on *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167 (2000), to support its argument that it has standing and that this matter is not moot. In *Laidlaw*, the issue was whether a private environmental group had standing to bring an action against a company that had, on 489 occasions prior to the district court judgment, violated its discharge permit levels for mercury under the Clean Water Act. The litigation spanned several years, and in that context the Court noted an "obligation to assure ourselves that [plaintiff] had Article III standing at the outset of the litigation." *Id.* at 180. However, as the Court also noted in discussing the relationship between standing and mootness, "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) *must continue throughout its existence* (mootness)." *Id*. at 189 (emphasis added)(parentheses in original)(citations omitted).

In view of Laidlaw's pervasive and repeated past violations of the Clean Water Act, it is understandable that the Court cited the principle that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id*. (citations omitted). That principle, however, does not apply here for at least two reasons. First, as the Fourth Circuit has held, a withdrawal or alteration of administrative policies or objectives "can moot an attack on those policies," *Bahnmiller*, 923 F.2d at 1089, notwithstanding the "voluntary cessation" principle. Second, the term "voluntary cessation of a challenged practice," as used in the case law cited by H&R Block,

would not accurately describe what has happened in this matter: the Commissioner is evaluating whether to apply a law to an entity that is not a national bank, and there is no prior history of pervasive regulatory action by the agency or other challenged agency "practice" that could be deemed to have "ceased." Nor is there even an allegation of "non-compliance" by a regulated entity, as there was in *Laidlaw* and other environmental cases cited by H&R Block. *See also*, *Environmental Prot. Info. Ctr. v. Pacific Lumber Co.*, 430 F. Supp. 2d 996, 1006 (N.D. Cal. 2006) (company violating Clean Water Act without permit obtained the required permit, but continued to make "persistent representations" that it does not need a permit for discharges into creek); *Malama Makua v. Rumsfeld,* 136 F. Supp. 2d 1155 (D. Haw. 2001) (reconsideration of environmental statements by the Department of Defense insufficient for concluding the case is moot, but court stayed the action pending the earlier of ninety days from the date of the court's order or the Department's issuance of a decision).

Moreover, the restraint exercised by the new Commissioner pending her re-evaluation is not the functional equivalent of the "voluntary compliance" in *Laidlaw*. At this point, the agency has taken no action in the past and is continuing to refrain from acting in the future while a new Commissioner undertakes a review of the agency's governing statutes and regulations and their potential applicability. Under these circumstances, there is no actual case or controversy, whether one chooses to characterize the dispute as unripe or moot.

## CONCLUSION

For the reasons stated above, the captioned matter should be dismissed because there is no case or controversy as required by Article III, § 2 of the Constitution.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland


By:  /s/ Jonathan R. Krasnoff
JONATHAN R. KRASNOFF
(Bar No. 07880)
Assistant Attorney General
Maryland Office of the Attorney General
500 N. Calvert Street, Suite 406
Baltimore, Maryland  21202-3651
Telephone: (410) 230-6123
Facsimile: (410) 333-6503
Email Address: jkrasnoff@dllr.state.md.us

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2007, a copy of Defendant's Reply To Plaintiff's Opposition To Oral Motion To Dismiss, which was electronically filed in this case on August 30, 2007, was mailed, via first class mail, postage repaid, to William Murphy, Jr., Esquire, The Murphy Firm, One South Street, 23rd Floor, Baltimore, Maryland 21202, and Matthew M. Neumeier, Esquire, Howrey LLP, 321 N. Clark Street, Suite 3400, Chicago, Illinois 60610, attorneys for plaintiff.

        By: /s/ Jonathan R. Krasnoff
             Jonathan R. Krasnoff